**JEFFERSON COUNTY, FLA., et al. v. UNITED STATES.**

No. 12008.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

J. Tom Watson, Atty. Gen. of Florida, and T. Paine Kelly, Asst. Atty. Gen. of Fla., for appellants.

Thomas L. McKevitt, Roger P. Marquis, and Alvin O. West, all of Washington, D. C., A. Devitt Vanech, Asst. Atty. Gen., and George Earl Hoffman, U. S. Atty., of Pensacola, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

This suit was brought by the United States to obtain relief from taxes assessed on, and to establish its tax immunity for the years in question as to, lands in Jefferson County, Florida.

The defenses were: (1) That the United States did not own the beneficial title to the lands but merely held a bare legal title in trust for the Florida Rural Rehabilitation Corporation; (2) that the lands were taxable under the Bankhead-Jones Farm Tenant Act;[1] (3) that under the provisions of the Resettlement Act,[2] the Resettlement Administration was expressly authorized to enter into agreements for the payment by the United States, on lands held by it for any resettlement project or any rural rehabilitation purpose, of sums in lieu of taxes, and the Secretary of Agriculture had for some years paid such sums.

The case was submitted to the judge without a jury on a stipulation of fact, written exhibits, and the oral evidence of one witness, Schwen, Chief of Farm Ownership Loan Service Section, an employee of the Department of Agriculture. In answer to specific questions he testified that none of the lands involved in the suit were being utilized for the purpose of Title I of the Bankhead-Jones Act.

It was stipulated, and the district judge found as a fact, that the United States by deed dated April 20, 1938, acquired title to the lands in controversy. He found too: That the lands were acquired with funds transferred to the United States by the Florida Rural Rehabilitation Corp.;[3] that all of the lands appeared on the tax rolls of Jefferson County, Florida, for the year 1943 and were assessed in the name of the United States; that they were offered for sale for non-payment of taxes, and tax certificates issued to the defendant, Jefferson County; and that the properties had subsequent to January 1, 1944, been conveyed by the United States to individual purchasers, each deed containing a warranty that as of the date of title there were no valid liens for taxes on the property. He concluded: that the lands were the property of the United States and not subject to taxation; that the taxes levied and the tax certificates based thereon were void; that the United States should have judgment cancelling the tax certificates and restrain-

---

[1] "§ 1024. Taxation

"(a) All property which is being utilized to carry out the purposes of sections 1001 to 1006 or sections 1007 to 1009 of this title (other than property used solely for administrative purposes) shall, notwithstanding that legal title to such property remains in the Secretary or the Corporation, be subject to taxation by the State, Territory, District, dependency, and political subdivision concerned, in the same manner and to the same extent as other similar property is taxed.

"(b) All property to which subsection (a) of this section is inapplicable which is held by the Secretary or the Corporation pursuant to this chapter shall be exempt from all taxation now or hereafter imposed by the United States or any State, Territory, District, dependency, or political subdivision, but nothing in this subsection shall be construed as affecting the authority or duty of the Secretary under any other law to make payments in respect of any such property in lieu of taxes. July 22, 1937, c. 517, Title IV, § 50, 50 Stat. 531." 7 U.S.C. A.

[2] 49 Stat. 2036, 40 U.S.C.A. § 432.

[3] The agreement between the Florida Rural Rehabilitation Corp. and the United States provided for transfer not of the naked legal title to be held in trust but of the full title. Art. II, Transfer of Assets, Sec. 1, provided, "The corporation does hereby bargain, sell, convey, transfer and assign to the United States of America, all of the assets and property, real, personal and mixed, tangible and intangible, of whatever character, and wherever located, of which the corporation is seized and possessed."

Sec. 2 provided that the corporation would convey any real property it had "by general warranty deed * * * and shall convey to the United States of America a valid unencumbered, indefeasible, fee simple title," subject to all outstanding obligations of the corporation. There was a provision that in the event the authority of the Secretary of Agriculture to do the things he had to do should cease, then the agreement should terminate and the property remaining of that transferred, together with the remaining proceeds should after liquidation be retransferred to the corporation or such person, corporation, or agency as may be designated by the Legislature of Florida.

ing the defendants from asserting any lien by virtue thereof, and he gave judgment accordingly.

■ We think it may not be doubted that the judgment was right and must be affirmed. The lands were deeded to, and were the property of, the United States. They were assessed on the rolls to the United States. The burden was therefore, strongly on the County to show that the United States did not own the lands, or if did, was not exempt as to them. The County offered no evidence whatever tending to show that the United States was not the owner. All of the proof showed that it was. The lands were bought by, and in the name of the United States. They were owned by the United States in fee simple absolute, and the fact that by law they were devoted to certain purposes would have no effect whatever to deprive it of its sovereign exemption.[4]

■ Appellants' second point that the property is not exempt because the Bankhead-Jones Act provides otherwise is no better taken. There is no evidence whatever that this property was at the time the taxes were assessed being utilized under the provisions of that law. In addition, Section 1924, the tax subjection section, is specifically made to apply to properties of the kind dealt with in the Act, held in the name of the Secretary or the Farmers' Home Corporation. Here the properties were not in their names but in the name of the United States. If it could be contended that the proviso[5] in Section 43 of the Act could in any case where the lands were not in the name of the Secretary or the Corporation, but in that of the United States, bring them under Subd. (a) Sec. 1024, 7 U.S.C.A., no facts are shown which would make out such a case here.

■ Appellants' third point, that under the authority of Section 2 of the Act of June 29, 1936,[6] the Secretary of Agriculture had been making payments to the County in lieu of taxes, makes against, not for, its contention that the lands are not tax free. If the property had been subject to taxation, the County would have been receiving taxes and not sums in lieu thereof. It was only where, and because, property was tax exempt that Congress authorized the Secretary to enter into agreement for payments in lieu. The judgment was right. It is affirmed.

---

[4] "A state cannot tax land of the United States situated within the state unless Congress provides otherwise. Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 1141, 87 L.Ed. 1504, 147 A.L.R. 761.

[5] "Provided, That any land held by the United States under the supervision of the Secretary pursuant to said Executive orders may where suitable be utilized for the purposes of sections 1001 to 1006 of this title, and the Secretary may sell said land and make loans for the necessary improvement thereof to such individuals and upon such terms as shall be in accordance with the provisions of sections 1001 to 1006 of this title." 7 U.S. C.A. § 1017.

